## Case No. 5,292.

### GEAR v. HOLMES et al.

[6 Fish. Pat. Cas. 595.] [1]

Circuit Court, D. Massachusetts. Dec., 1873.

PATENTS—CONSTRUCTION — GROUNDS FOR PRELIMINARY INJUNCTION.

1. Effect of words "to be held to the full end of the term for which said letters patent are or may be granted," when used in the habendum of the deed, reconsidered.

2. Where the assignor, from whom complainant derived title, had never done anything with the patent, in the state where the suit is pending, during its extended term, and de-

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

fendants bought their machines in ignorance of his rights, and the existence of the machines now set up as prior to the patent was the subject of different issues from those in the former suit on the patent, in which its validity was sustained: Held, that the court would not, upon preliminary motion, enjoin the defendants from using the machines, but that the court would have acted differently if it had appeared that the defendants were not responsible.

3. If the court were sitting in any other state, it would grant an injunction against users of the machines there, as the assignor's neglect would not affect complainant's rights in a state where complainant's title was not derived through him.

In equity. Motion for provisional injunction. Suit brought upon letters patent [No. 10,204], for "a machine for turning and cutting irregular forms," granted Nathaniel Gear, November 8, 1853, and extended seven years from the expiration of the original term. The same patent was sued upon in the case of Gear v. Grosvenor [Case No. 5,291]. The complainants in that suit had received an assignment from Nathaniel Gear, the patentee, in 1867, of all his right in the extension of the patent. Subsequently to the decision above referred to, the decision of the supreme court in the late case of Nicolson Pavement Co. v. Jenkins [14 Wall. (81 U. S.) 452] was brought to the attention of this court, and inasmuch as the supreme court there held that the conveyance by an inventor of all his right in the invention to be held "to the full end of the term for which said letters patent are or may be granted," carried the extension to his assignee, this court, upon a rehearing of the case, held that a conveyance made by Nathaniel Gear, of his right in the invention in Massachusetts, to one T. D. Scott, in 1853, carried the extension of his patent to him, and that therefore the former decision for the plaintiffs should be reversed, and from this decree plaintiffs appealed to the supreme court. In the suits now before the court, the plaintiff [Alonzo L. Gear] showed that he had bought the title of T. D. Scott, and that the patent had been sustained by a decision of the United States circuit court in Virginia. The defendants [F. M. Holmes and others] introduced affidavits of various persons to prove four defenses: (1) That Nathaniel Gear was not the inventor, but fraudulently took the invention from one Ball, who did work for him on machines; (2) that a similar machine was in use in Cincinnati in 1852, which was made by Steptoe & McFarlan, manufacturers of machinery there; (3) that a similar machine was in use in Connecticut in 1852; (4) that a similar machine was in use in Zanesville, Ohio, between 1848 and 1851. The defendants had also filed twelve affidavits in former suits, to the effect that a similar machine was in use in a certain building in Philadelphia, by Hart, Ware & Co., in 1851, but this defense was abandoned when the complainant showed that they did not occupy that building until 1852. The defendants further showed

that the complainant had sold a large number of these machines in Massachusetts before he acquired Scott's title, which the complainant showed that he did, supposing he owned the title under N. Gear's assignment to him in 1867. The defendants further showed that Scott had never exercised any rights under the extension of the patent in Massachusetts, and that they had bought their machines in ignorance of the existence of the patent.

T. L. Livermore, for complainant.

Chauncey Smith and D. H. Rice, for defendants.

SHEPLEY, Circuit Judge, said that he never before had had any evidence, other than the patent itself, that Nathaniel Gear invented the patented machine; but that the affidavit of Ball and others satisfied him now that Nathaniel Gear did invent it, notwithstanding anything he himself might now say; but that whether he was the first inventor, he did not now decide. Upon this point, he said that he did not believe that the Cincinnati machine existed, for the reason that the evidence was that, in 1859, the owners of the patent had exhibited the patented machine in Cincinnati, and invited the wood-workers there to buy it; that at this time Steptoe & McFarlan exhibited a machine of their manufacture, of another kind, for the same work, and that the two machines were run in competition beside each other, in the presence of a large number of furniture manufacturers and wood-workers of Cincinnati, and that the result of it was that they all purchased the patented machine; and that he did not believe that Steptoe & McFarlan would have permitted themselves to be thus outsold in their own market if they, in fact, had made a machine like the patented one, before Nathaniel Gear got the patent for it.

The affidavits had raised fair issues in his mind as to whether the Zanesville and Connecticut machines did really exist before the patent was granted, and that he thought these were issues which required a full investigation on a final hearing. He further said that in the former case of Gear v. Grosvenor [supra] believing that the law should be construed as designing that extensions of patents were to inure to the benefit of the inventor, and not his assignees, and that therefore his assignments, made during the original term of the patent, ought to be construed with all the strictness applicable to the construction of deeds, so as, if possible, to exclude the extension from the subject-matter conveyed, he had held that the conveyances of Nathaniel Gear, during the original term of the patent relied upon by the defendants, did not carry the extension in Massachusetts, and that, therefore, it remained his, and was conveyed by him to the plaintiff in 1867; but that, subsequently, the case of the Nicolson Pavement Co. v.

Jenkins [14 Wall. (81 U. S.) 452] had been brought to his notice by the defendants, and that the supreme court had chosen in that case to take the ground, that assignments of inventions by inventors should be construed in the loosest way, and, disregarding what it termed the technicalities applicable to the construction of deeds, had held that such assignments were to be construed in the same way as common contracts, and that the use of the word "invention," in conjunction with the habendum, "to be held to the full end of the term for which said letters patent are or may be granted," would carry the extension; that he was bound to follow this decision. And that inasmuch as the assignment of Nathaniel Gear to Scott, in 1853, which, though in the record, had not been so brought to his notice as to receive his consideration, was now brought to his notice, he was obliged to hold that the use of the word "invention" in it carried the extension of the patent in Massachusetts to Scott; that the plaintiff now relied upon the title which he had obtained from Scott's administrator among others, and for the purposes of this hearing must be held to rely on Scott's title, and therefore was subject to all the equities that might have been set up against Scott himself, if he were plaintiff; that upon this state of the law, inasmuch as Scott had never done anything with the patent in Massachusetts during its extended term, and these defendants had bought their machines in ignorance of his rights, through his neglect to make them known, and the existence of the machines, now set up as prior to the patent, was the subject of different issues from those in the former suit on the patent, where other machines were set up as prior to the patent, and its validity was sustained, the court would not enjoin these defendants from using the machines before the issues raised had been tried on a final hearing; that the court would have acted differently, if it had been shown that these defendants were not responsible, and able to pay damages which plaintiff might recover against them on the final hearing; but that as it was not suggested that they were not responsible, no irreparable injury would result to the plaintiff by the use of the machines during the pendency of the suit. But that if the court were sitting in any other state, it would grant injunctions against users of the machines there, because Scott's neglect would not affect the plaintiff's rights in states in which the title was not derived from him; and further, that the court would grant injunctions against any manufacturers of the machines, in this or other states, in suits by this plaintiff against them.

[For other cases involving this patent, see Gear v. Fitch, Case No. 5,290; Gear v. Grosvenor, Id. 5,291.]